UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AGATHA CHINWE NNENNA MUOZOBA,

                       Plaintiff,

v.                                          1:23-CV-1112
                                          (GTS/MJK)
UR M. JADDOU, in her Official Capacity as Director,
United States Citizenship and Immigration Services,

                       Defendant.

_____

APPEARANCES:                                OF COUNSEL:

BLESS LITIGATION                       JESSE M. BLESS, ESQ.
  Counsel for Plaintiff
6 Vineyard Lane
Georgetown, MA 01833

U.S. DEPARTMENT OF JUSTICE            TROY D. LIGGETT, ESQ.
OFFICE OF IMMIGRATION LITIGATION
  Counsel for Defendant
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this immigration action filed by Agatha Chinwe Nnenna

Muozoba ("Plaintiff") against Ur M. Jaddou, in her official capacity as Director of the United

States Citizenship and Immigration Services ("Defendant"), are Defendant's motion to dismiss

Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to

Fed. R. Civ. P. 12(b)(6), and Plaintiff's cross-motion for summary judgment.  (Dkt. Nos. 9, 11.)

For the reasons set forth below, Defendant's motion is granted, and Plaintiff's cross-motion is

denied.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, in her Complaint, Plaintiff asserts four claims, all of which are based on an allegation that Defendant's actions in denying her petitions to classify her adopted son and daughter as eligible for admission to the United States were arbitrary and capricious in violation of the Administrative Procedure Act ("APA").  (Dkt. No. 1.)  Specifically, Plaintiff claims that the United States Citizenship and Immigration Services' ("USCIS") decision was arbitrary and capricious for the following reasons: (1) USCIS improperly collaterally attacked records provided by Plaintiff as part of her petition from the Ministry of Women Affairs and Social Development of the Government of Anambra, State of Nigeria ("Ministry") and from the Magistrate's Court of Anambra, State of Nigeria, Nnewi Magisterial District ("Magistrate's Court"); (2) USCIS improperly relied on speculation and conjecture to find certain evidence submitted with Plaintiff's petition to be not credible; (3) USCIS improperly failed to advise Plaintiff of derogatory evidence as required by 8 C.F.R. § 103.2(b)(16); and (4) USCIS misapplied the preponderance of the evidence standard and instead subjected Plaintiff's petition to a higher evidentiary standard.  (*Id.* at ¶¶ 111-163.)

### B.      Parties' Briefing on Defendant's Motion to Dismiss

#### 1.      Defendant's Memorandum of Law

Generally, in her motion to dismiss, Defendant makes four arguments regarding Plaintiff's causes of action.  (Dkt. No. 9, Attach. 1.)  First, Defendant argues that Plaintiff's assertion that USCIS collaterally attacked records from the Ministry and findings made by the Magistrate's Court must fail as a matter of law because USCIS had no obligation to abide by

2

such evidence without also conducting a consideration of the totality of the evidence presented. (*Id.* at 16-20.)  Specifically, Defendant argues that (a) although regulations require USCIS to accept determinations of the validity of an adoption according to the law of the country of adoption, USCIS did not here contest that the adoption occurred in accordance with Nigerian law, but rather argued that the fact of adoption "does not prove either child's identity or that either child meets the definition of an orphaned child under 8 U.S.C. § 1101(b)(F)(1)," (b) regulations related to non-Hague Adoption Convention cases (such as here, given that Nigeria is not a member-state of that Convention) do not require deferring to "competent authorities in the foreign country" for a determination regarding the origin, identity, or orphanhood of the child in the circumstances presented here, but instead provide that identity and orphanhood are factual determinations that a petitioner must prove by a preponderance of the evidence, and (c) USCIS provided sufficient explanations to support its finding that the relevant Ministry and Magistrate's Court documents do not demonstrate the children's identities and orphanhood by a preponderance of the evidence.  (*Id.*).

Second, Defendant argues that USCIS' findings regarding the credibility of certain evidence is supported by satisfactory explanations and this Court may not reweigh that evidence or substitute its judgment for that of USCIS.  (*Id.* at 20-23.)

Third, Defendant argues that Plaintiff has failed to plausibly allege that USCIS failed to meet the requirement to disclose derogatory information related to the I-604 investigation conducted by the U.S. Consulate because it provided her with a detailed summary of that investigation report and its findings and afforded her an adequate opportunity to respond to problems identified therein.  (*Id.* at 23-25.)

Fourth, Defendant argues that Plaintiff's last claim fails as a matter of law because USCIS considered all relevant evidence and applied the proper evidentiary standard, and Plaintiff's argument amounts to little more than a request for this Court to reweigh the evidence and substitute its judgment for that of USCIS. (*Id.* at 25-28.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff makes four arguments regarding Defendant's challenge to the sufficiency of her claims. (Dkt. No. 10.)[1] First, Plaintiff argues that she has stated a plausible claim as to her first cause of action because USCIS failed to consider the findings of the Magistrate's Court, which Plaintiff argues constitute "primary evidence of abandonment under USCIS policy" because the Magistrate's Court "considered the evidence of identity and abandonment of the children and reached a contrary judgment" from USCIS. (*Id.* at 18-21.) She further argues that USCIS collaterally attacked the Magistrate's Court's adoption decree by implicitly rejecting it without any evidence that it was a product of fraud. (*Id.* at 21-23.)

Second, Plaintiff argues that USCIS made inappropriate spurious and speculative findings to support its credibility determination–specifically related to the timing of evidence submission, the shape of stamps on that evidence, and "insensitive comments" it made about one

---

[1]     In fact, Plaintiff argues that she is entitled to summary judgment on three of her four claims. (Dkt. No. 11.) Because the Court finds that Plaintiff's cross-motion for summary judgment is premature (given the fact that the sufficiency of her claims has been placed at issue by Defendant's motion), the Court has reframed her arguments (out of an extension of special solicitude to her as a civil rights litigant) to more appropriately respond to the threshold issues raised by Defendant.

child's natural mother–that are insufficient to support its conclusion with substantial evidence. (*Id.* at 23-31.)

Third, Plaintiff argues that USCIS "imposed a novel evidentiary standard" on her by refusing to credit the evidence she submitted to support her petitions based on the fact that such evidence was submitted in response to its own demands for additional evidence. (*Id.* at 31-32.)

Fourth, Plaintiff states that, "[i]n light of *Rosati*," she "has decided not to pursue" her claim regarding the failure to disclose derogatory evidence. (*Id.* at 28 n.7.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition memorandum of law, Defendant makes three arguments. (Dkt. No. 15.) First, Defendant argues that USCIS did not disregard the Magistrate's Court's findings and judgments, nor did it challenge any of the findings in the adoption decrees, and it was not required to deem that evidence to be proof of identity and orphanhood because the adoption decrees do not make any findings regarding those factors. (*Id.* at 5-8.)

Second, Defendant argues that USCIS properly considered inconsistencies in the evidence when finding certain evidence to not be credible and their findings were not merely speculative. (*Id.* at 8-11.)

Third, Defendant argues the USCIS properly considered and weighed the evidence and applied the appropriate legal standard. (*Id.* at 11-12.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3)

8

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[2]

## B.     Legal Standard Governing  Review of an Agency Decision Under the Administrative Procedure Act

"In agency review cases such as this, it is proper for the court to decide at the motion to

dismiss stage whether plaintiffs have an actionable legal theory as to the requirement they allege

binds the agency." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 151 (D.D.C. 2017) (citing *People for*

---

[2]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*the Ethical Treatment of Animals v. United States Dep't of Agric.*, 797 F.3d 1087, 1092-93, 1099 [D.C. Cir. 2015]).  "The court may even look outside the four corners of the complaint when the plaintiff pleads a specific theory for why the agency is bound, and attaches the relevant documents."  *Skalka*, 246 F. Supp. 3d at 151 (citing *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 [D.C. Cir. 2006]).

"When a party challenges agency action under the APA, the district court acts as an 'appellate tribunal' and the case on review presents 'a question of law.'"  *Rosati v. Mayorkas*, 691 F. Supp. 3d 597, 602 (N.D.N.Y. 2023) (Hurd, J.).  "[R]eview of agency actions under the Administrative Procedure Act is 'narrow and deferential.'"  *Am. Cruise Lines v. United States*, 96 F.4th 283, 286 (2d Cir. 2024) (quoting *Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 [2d Cir. 2022]).  That review is "'limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  *Kakar*, 29 F.4th at 132 (quoting *Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 97 [2d Cir. 2001]).  "Thus, [u]nder the APA, we may set aside an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'"  *Kakar*, 29 F.4th at 132 (quoting *Alzokari v. Pompeo*, 973 F.3d 65, 70 [2d Cir. 2020]).  "An agency's decision is arbitrary and capricious only if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Am. Cruise Lines v. United States*, 96 F.4th at 286; *see also Ohio v. Env't Prot. Agency*, 603 U.S. — , 144 S.Ct. 2040, 2053 (2024) ("An agency

action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'") (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 [2021]).

In reviewing an administrative decision, "'[t]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Nwankwere v. Jaddou*, 22-CV-1212, 2023 WL 5835785, at *6 (E.D. Ca Sept. 8, 2023) (quoting *United States Citrus Sci. Council v. United States Dep't of Agric.*, 312 F. Supp. 3d 884, 894 [E.D. Cal. 2018]).  However, "a court may not 'substitute its judgment for that of the agency,'" but "must ensure, among other things, that the agency has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Ohio v. Env't Prot. Agency*, 144 S.Ct at 2053 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 [2009]; *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 [1983]).

## III.   ANALYSIS

After carefully considering whether Plaintiff has pled facts to plausibly suggest that the USCIS abused its discretion and rendered its findings in an arbitrary and capricious manner, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law.  *See, supra,* Part I.B.1 and 3 of this Decision and Order.  To those reasons, the Court adds the following analysis.[2]

---

[2]     As an initial matter, the Court acknowledges that a review of an agency decision in cases such as this one usually occurs at the summary judgment stage, and that Plaintiff has filed a cross-motion for summary judgment that is currently pending.  However, before addressing whether Plaintiff's cross-motion possesses any merit, the Court finds it appropriate to address the threshold issues raised by Defendant's motion to dismiss for four reasons: (1) reviews of agency decisions are necessarily related to matters of law rather than fact and thus are suitable for resolution on a motion to dismiss; (2) Plaintiff has appended a great deal of the relevant record

Plaintiff's First Claim asserts that the USCIS acted in an arbitrary and capricious manner by collaterally attacking the findings of the Magistrate's Court and of the Ministry itself related to the origin, identity, orphan status, and adoption process of Plaintiff's two adopted children because those entities are "competent authorities" who "have the responsibility to make determinations" regarding those issues, and the USCIS was therefore required to defer to their findings.  (Dkt. No. 1, at ¶¶ 111-131.)  Yet Plaintiff's arguments in opposition to Defendant's motion to dismiss do not suggest that this assertion is legally supported.  Specifically, Plaintiff attempts to argue that the findings and adoption decrees of the Magistrate's Court constitute primary evidence of abandonment because the Magistrate's Court "considered the evidence of identity and abandonment of the children and reached a contrary judgment" than that of USCIS.  (Dkt. No. 10, at 18-20.)  As Defendant argues, however, Plaintiff's argument ignores the fact that the adoption decrees appended to the Complaint simply do not show that the Magistrate's Court made any findings related to identity or orphanhood.  (Dkt. No. 1, Attach. 2, at 23-27, 49-50.)

The fact that the Magistrate's Court may have considered evidence from Ministry officials that purports to attest to the identity and orphanhood of the children before issuing those decrees does not mean that the Magistrate's Court rendered findings on those issues, and Plaintiff has presented no allegation, evidence, or legal authority to suggest that the Magistrate's Court was required to make such findings to effectuate a valid adoption pursuant to Nigerian

---

evidence to the Complaint and thus has permitted the Court to consider such evidence on a motion to dismiss; (3) Plaintiff's submission for her summary judgment motion is identical to the response papers she filed here and notably does not include any additional evidence for the Court to consider, a fact which suggests that Plaintiff does not believe there is other relevant evidence from the administrative record that the Court would be required to assess related to her claims and legal theories in order to review USCIS' determination; and (4) indeed, no further administrative record has been identified and filed by the parties in this case.

law.  Because there is no indication that the Magistrate's Court made any findings on the identity and orphanhood of the children in the sense implicated by USCIS' analysis, there was no requirement to consider the adoption decrees to be primary evidence *of abandonment* or to afford the Magistrate's Court findings any deference regarding those issues.[3]

Moreover, to the extent Plaintiff alleges in the Complaint that USCIS also collaterally attacked findings of the Ministry itself, she appears to have abandoned that portion of her First Claim because she makes no argument in support of her allegations regarding Ministry records on this issue, only the Magistrate's Court decrees.  *See Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005) (finding that the plaintiff had abandoned his challenge to the Immigration Judge's denial of his claim for withholding of removal "by failing to discuss that claim anywhere in his brief"); *Cao-Bossa v. New York State Dep't of Labor*, 18-CV-0509, 2021 WL 3674745, at *11 (N.D.N.Y. Aug. 19, 2021) (Suddaby, C.J.) (stating that "when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that

---

[3]      Although USCIS' notation in the Determinations that there did not appear to be evidence of consent for Plaintiff to act on behalf of her husband at the adoption hearing (at which her husband was not present) and citation to a failure of proof related to a purported waiver of the three-month fostering period could be interpreted as perhaps attacking the validity of the adoption itself, any such error in questioning the Magistrate's Court's decrees in that respect would be harmless because it is clear from the Determination as a whole that USCIS did not deny Plaintiff's petition on the basis that it determined the adoption was invalid, but rather because Plaintiff had failed to produce sufficient credible evidence to prove the identity and orphanhood status of the children.  (Dkt. No. 1, Attach. 2, at 9, 20.)  Because, as will be discussed below, USCIS provided sufficient reasons to support its findings regarding identity and orphanhood, the suggestion that it may have considered some reasons that bear upon the validity of the adoption is merely harmless error that does not require remand.  *See Jafarov v. United States Citizenship and Immigration Servs.*, 23-CV-3372, 2024 WL 69056, at *10 (S.D.N.Y. Jan. 5, 2024) ("Where 'it is clear that the agency would adhere to its prior decision in the absence of error,' no remand is required.") (quoting *Xiao Ji Chen v. United States Dep't of Just.*, 471 F.3d 315, 338 [2d Cir. 2006]).

the argument possesses facial merit, which has appropriately been characterized as a 'modest burden'").  Notwithstanding, as Defendant argues, none of the Ministry documents themselves constitute a foreign court proceeding, decree, order, finding, or judgment that would be entitled to any deference under USCIS' Policy Manual or international law.  (Dkt. No. 15, at 7.)  The record does contain a written release of parental rights by the birth mother of the female adopted child, which the Policy Manual would classify as primary evidence of abandonment.  USCIS Policy Manual, Vol. 5, Part C, Chap. 7.B.4 ("In the case of abandonment, primary evidence may also include a written release by the parent[s] of a child to an authorized orphanage [or other third party authorized under the child welfare laws of the foreign-sending country to provide custodial care in anticipation of or preparation for adoption] demonstrating that the parent[s] gave up all parental rights to the child and physically gave up control and possession unconditionally to the orphanage or other third party.")  However, even if that evidence constitutes primary evidence of abandonment, the Policy Manual indicates that a decree or order by "a foreign court" can generally be relied upon as authentic and accepted in the absence of specific material information that it was obtained by fraud; it does not extend any similar deference or presumption of authenticity to evidence from a birth parent documented in the records of a competent authority that is not a court, and Plaintiff has not pointed to any authority, in the Policy Manual or otherwise, that suggests that USCIS is not permitted to question the authenticity or impact of primary evidence.  USCIS Policy Manual, Vol. 1, Part E, Chap 6.B, and Vol. 5, Part C. Chap. 8.C.2.  Moreover, as will be discussed in greater detail below, the USCIS identified inconsistencies in the evidence related to the abandonment of both adopted children that impacted the assessment of both their orphanhood and identities; notably, USCIS found that

the evidence does not sufficiently show that the female child purportedly abandoned by the relevant birth mother was in fact the same child that Plaintiff ultimately adopted due to lack of documentation and discrepancies in what name the child was referred to in various documents. Lastly, although Plaintiff makes various conclusory arguments that USCIS failed to consider the findings of the Magistrate's Court or the Ministry, consideration of that evidence is clearly reflected in the copies of USCIS' Determinations appended to the Complaint.  The fact that USCIS did not afford that evidence as much weight as Plaintiff would like is not an error. Plaintiff's First Claim must be dismissed as a matter of law.

Plaintiff's Second and Fourth Claim, while resting on different premises, both at their core depend on Plaintiff's assertion that the USCIS failed to provide valid reasons for declining to rely on various later-submitted evidence that USCIS deemed to be not credible when determining that Plaintiff had failed to provide sufficient evidence of the children's identity and orphanhood.  As to the Second Claim, Plaintiff argues that USCIS' reasons for finding that evidence to be not credible are too speculative to support its finding with substantial evidence, focusing particularly on (a) USCIS' reasons related to the timing of her submission of that evidence and the shape of the Magistrate's Court record stamp on those later-submitted documents, (b) its crediting of the I-604 report of the Consulate over the other evidence, and (c) its "insensitive" comments about one child's natural mother.  (Dkt. No. 10, at 23-31.)  All of these attempts to undermine USCIS' Determinations fail because they are based on an ungenerous and unsupported interpretation of what USCIS actually found.

Regarding USCIS' notation of the timing of the submission of certain evidence, it did not arbitrarily punish Plaintiff merely because she submitted evidence at a later stage in the

proceeding.  Rather, it noted in its Determinations that various evidence submitted in response to USCIS' request for evidence in the Notice of Intent to Deny letter would have existed at the time Plaintiff made previous submissions of evidence (as evidenced by the fact they contained stamps from the Magistrate's Court that indicate they were part of the file that court had related to the children's adoptions), and in some cases would have been in the same file of the Magistrate's Court from which she obtained other previously submitted evidence; yet Plaintiff had not provided any explanation as to "why those documents were not included in your prior filings if they existed all along in the Magistrate Court file for the child."  (Dkt. No. 1, Attach. 2, at 8-9, 19.)  Contrary to Plaintiff's assertion that USCIS had no basis other than pure speculation to suspect that the more recently submitted evidence might be fraudulent or manufactured, USCIS reasonably relied on the fact that Plaintiff inexplicably failed to submit certain evidence until it had issued a Notice of Intent to Deny despite the fact that such evidence would have existed at the time Plaintiff submitted her initial and supplementary filings and that the previous requests for evidence specifically asked for proof of identity and orphanhood.  The reasonableness of this finding is also supported by the fact, as USCIS noted in the Determinations, that other evidence (specifically that from the I-604 investigation) further undermined the validity of the later-submitted evidence.

Similarly, Plaintiff misinterprets USCIS' notations regarding the shape of the Magistrate's Court stamp on some of the more recently submitted documents.  USCIS does not appear to base its conclusion of potential inauthenticity or fabrication of evidence upon the fact that the stamp on the later-submitted documents was a different shape beyond merely noting that the relevant documents contained circular stamps with dates after that of USCIS' request for

evidence and before Plaintiff's request response.  (Dkt. No. 1, Attach. 2, at 8, 19.)  There is no indication that USCIS relied specifically on the shape of the stamps, as opposed to the fact that the presence of the stamps implied that such documents were ostensibly part of the Magistrate's Court's adoption file, when finding that Plaintiff's late submission of evidence that purportedly existed and was in the Magistrate's Court's file much earlier raised suspicion that such evidence was inauthentic.

Plaintiff also argues without citation to any legal authority that USCIS was not permitted to rely on the Consulate's I-604 investigation findings, including statements made during that investigation by the director of the orphanage where both children were placed, to discredit other contrary evidence.  Plaintiff's argument is unavailing and amounts to little more than a request to this Court to reweigh the evidence in a manner different than USCIS.  *See Lockheed Martin Corp. v. Administrative Review Bd., U.S. Dep't of Labor*, 717 F.3d 1121, 1129 (10th Cir. 2013) (noting that the review standard under the APA "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*"); *see also Colorado Environmental Coalition v. Salazar*, 875 F. Supp. 2d 1233, 1244 (D. Colo. 2012) (noting that "[i]t is not the court's role to weigh conflicting evidence or evaluate credibility" when reviewing an agency decision under the APA) (citing *Pennaco Energy, Inc. v. U.S. Dep't of Interior*, 377 F.3d 1147, 1159 [10th Cir. 2004]).  Given that there is no reason to suspect that the information in the I-604 investigation report, as documented in the Determinations, is not credible, it was fully within USCIS' authority to consider and reconcile conflicting evidence in a reasonable manner, which it did here as evidenced by its explanation of why it found the contrary evidence submitted by

17

Plaintiff to not be credible.  Specifically, USCIS noted that, during the Consulate's interview with Sister Philomena Akuchukwu (who has been the coordinator of the relevant orphanage since 2016), Sister Philomena "explained that the Ministry provided very little direct oversight and prior to 2021 the Orphanage's record keeping was very basic," and she "confirmed she did not have any records for the child and could not recall any details of the case."  (Dkt. No. 1, Attach. 2, at 4-5, 15.)  USCIS noted that the Consulate concluded that "the lack of record keeping by the Orphanage likely means reports from the Ministry are based upon thin air or upon memory alone."  (Dkt. No. 1, Attach. 2, at 15-16.)  USCIS found that this interview testimony directly contradicted a later-submitted affidavit from Sister Philomena that attested to matters concerning her knowledge of the identity and orphanhood of the children.  (Dkt. No. 1, Attach. 2, at 8-9, 19.)  Plaintiff has offered no argument as to why it was inappropriate for USCIS to rely on the Consulate's interview with Sister Philomena instead of her affidavit or other contradictory evidence from the Ministry.

Plaintiff also argues that USCIS erred in relying on "insensitive" comments resting on "[c]onclusions drawn from unfounded cultural assumptions" that cannot support an adverse credibility determination because it "doubted the testimony of the birth mother [of G.A.M.]" based on her failure to provide proof of a police report regarding her rape or to mention the birth father of the child in her Denouncement of parental rights.  (Dkt. No. 10, at 29-30.)  However, once again, Plaintiff's interpretation of USCIS' findings is ungenerous and unsustainable. USCIS highlighted various inconsistencies in the records that were relevant to the question of identity and orphanhood and Plaintiff's attempts to paint that analysis as insensitively slandering the birth mother do not suggest any legal error.  Specifically, USCIS noted that, although the

Denouncement of parental rights signed by the birth mother did not make any reference to how or when she became pregnant or mention the birth father, the intake report from the orphanage stated the pregnancy was the result of rape by armed robbers.  (Dkt. No. 1, Attach. 2, at 14-15.) They further noted that the birth mother later submitted affidavits to the High Court stating she was raped by armed robbers, but such filing did not include a police report from the time of the incident, and that in fact she went to a police station after her appearance in that court to file a police report; the Consulate noted in its report that this police station was not close to either the location of the court or the birth mother's address, had no relation to the case, and was the same police station where a police report was filed for the other child Plaintiff had adopted.  (Dkt. No. 1, Attach. 2, at 15.)   USCIS appropriately relied upon these inconsistencies in the evidence in finding that Plaintiff had not met her burden to substantiate identity and/or orphanhood by a preponderance of the evidence, noting also that Plaintiff had not submitted any information regarding in which local maternity the relevant child had been born or any evidence that either the orphanage or the ministry verified the birth mother's story.  (Dkt. No. 1, Attach. 2, at 19-20.) The Court may not second-guess USCIS' reasonable resolution of such questions of fact.  *Ohio v. Env't Prot. Agency*, 144 S.Ct at 2053.  Because USCIS has provided valid reasons for finding the various evidence Plaintiff submitted to be not credible, and because those reasons support its determination, Plaintiff's Second and Fourth Claims must both be dismissed.[4]

---

[4]     Plaintiff's Fourth Claim is little more than a restatement of her Second Claim under a different guise, in that it alleges that, had USCIS not arbitrarily and capriciously disregarded the relevant evidence for the above reasons (particularly because certain evidence was not submitted until later in the application process), it would have found that she had shown the relevant requirements by a preponderance of the evidence.  (Dkt. No. 1, at ¶¶ 154-163.)  Therefore, because the Court finds no error in USCIS' assessment of the credibility of the relevant evidence, Plaintiff's Fourth Claim also fails to state a claim upon which relief can be granted.

Lastly, as was discussed above, Plaintiff has effectively abandoned her Third Claim related to failure to advise her of derogatory information related to the I-604 investigation in response to her consideration of this Court's decision in *Rosati v. Mayorkas*, 691 F. Supp. 3d 597 (N.D.N.Y. Sept. 7, 2023) (Hurd, J.) (holding that a summary of derogatory information satisfies 8 C.F.R. § 103.2[b][16]).  (Dkt. No. 10, at 28 n.7.)  As noted in that decision, the relevant regulation, 8 C.F.R. § 103.2(b)(16), "does not require the agency to provide the petitioner with an opportunity to inspect actual evidence or cross-examine witnesses," but rather, it "merely requires the agency to inform the petitioner of derogatory information and offer the petitioner an opportunity to rebut it." *Rosati*, 691 F. Supp. 3d at 605.  The Court concluded that providing the claimant with a summary of the relevant derogatory information was sufficient and that USCIS was not required to "provide in painstaking detail the evidence of fraud it finds." *Id.*  In the current case, USCIS' decisions make clear that it provided Plaintiff with sufficient information regarding the relevant findings of the I-604 investigation even if it did not provide her with a copy of the Consulate's investigation report or a transcript of interviews with witnesses conducted as part of that investigation.  In light of the documents appended to the Complaint, the Court would find that Plaintiff's Third Claim should be dismissed for failure to state a claim upon which relief can be granted, even if it were not to find that Plaintiff has effectively abandoned this claim.[5]

---

[5]     As stated earlier, Plaintiff has expressly stated that she has "decided not to pursue this claim" in light of this Court's decision in *Rosati*. (Dkt. No. 10, at 28 n.7 [stating that "[i]n light of *Rosati*, [Plaintiff] will not move for summary judgment" on this claim, that "Defendant filed their motion to dismiss [this claim] . . . ," and that, "[s]ince [Plaintiff] has decided not to pursue this claim, this Court need not decide whether the allegations provided in the Complaint satisfied the pleading standard under Rule 8(a)"].) *Cf. Jackson v. Fed. Exp.*, 766 F.3d 189, 197-98 (2d Cir. 2014) ("Where a partial response to a motion is made–i.e., referencing some claims or

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss for failure to state a claim (Dkt. No. 9) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 11) is

**DENIED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 28, 2024
    Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

defenses but not others–a distinction between *pro se* and counseled responses is appropriate. . . .
[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial
opposition that relevant claims or defenses that are not defended have been abandoned.").